Robert GARCIA

v.

UNITED STATES of America.

Civ. No. A–91–CA–903.

United States District Court,
W.D. Texas,
Austin Division.

July 17, 1992.

Lloyd E. Bemis, Lonnie Roach, Shields & Rusk, Austin, Tex., for plaintiff.

Mollie S. Crosby, U.S. Attorney's Office, Austin, Tex., for defendant.

### ORDER

NOWLIN, District Judge.

Before the Court is the issue of whether an employee of the United States was acting within the scope of his employment at the time of the accident giving rise to this lawsuit. Having reviewed the various pleadings, the deposition testimony, and the applicable caselaw, the Court is of the opinion that the employee was acting within the scope of his employment. Therefore, the plaintiff's motion to remand is DENIED.

## I. BACKGROUND

This lawsuit was originally commenced in state court by the Plaintiff Robert Garcia against an individual defendant, a special agent for the Environmental Protection Agency of the United States.[1] The cause

was removed to federal court and the United States attorney certified that the agent was acting within his scope of employment. The United States was then substituted as the party defendant.

On February 27, 1992, the plaintiff's attorney conducted a deposition of the EPA agent, and the deposition revealed the following testimony. The EPA agent is a federal official. He is based and resides near Dallas. His superiors had ordered the agent to proceed to Austin to participate in a federal criminal investigation in the Austin area, until they ordered him to do otherwise. The agent had been issued an official government travel authorization. The agent drove from Dallas to Austin in a government-owned vehicle. Apparently, the EPA has a pool of vehicles from which it assigns vehicles to its investigating agents to use to participate in investigations. The agent drove the car that was assigned to him.[2]

On this particular trip, the agent arrived in Austin several days before the accident occurred. At government expense, the agent resided at a local hotel. Late in the evening, after leaving one of the particular sites he was investigating, the agent testified that he initially was in search of a place to eat. Eventually, the agent stopped at a local restaurant and bar. While there, the agent did not eat but did consume alcoholic beverages. The agent also testified that he had an ulcer. Upon leaving the restaurant, the agent drove a short distance in search of a pharmacy. Not being able to recall the exact details, the agent stated that he found a pharmacy but he did not go inside. Instead, after he had stopped the car, he became nauseated.

Apparently, after driving a short distance further, the agent collided with the plaintiff's automobile. The agent was arrested and charged with driving while in-

---

**1.** This Court does not state the specific name of the agent because this Court recognizes the need for confidentiality and also the lack of relevance.

**2.** As well as a modest per diem reimbursement for expenses, the Government paid for the gasoline used by its agents on business trips. The Government does not reimburse the agent for the consumption of alcoholic beverages.

toxicated.[3] The local police gave the agent a breath-test that demonstrated a blood-alcohol level of .2, twice the legal limit. The agent conceded that he had been intoxicated at the time of the accident.

Evident from the deposition is the stressful lifestyle of a federal agent. The hours are long and irregular. Extensive travel is involved.

The EPA did try to prevent its agents from becoming involved in traffic accidents. During his five years with the EPA preceding the accident, the agent's superiors had required the agent to participate in several defensive driving courses.

This case presents an interesting situation. Over the years, seeking to obtain liability on behalf of the employer, plaintiffs have historically argued that an employee was acting within the scope of employment. In this case, the plaintiff argues that the defendant employee was not acting within the scope of his employment. Presumably, the plaintiff seeks to avoid the application of the Federal Tort Claims Act (the "FTCA").

## II. SCOPE OF EMPLOYMENT UNDER THE FTCA AND THE WESTFALL ACT

### A. *Reviewability*

■ An initial issue in this case was whether this Court could review the Assistant United States Attorney's certification that the defendant employee was acting within the scope of his employment. *See* 28 U.S.C. § 2679(d). This Court does agree with the United States that some consideration should be recognized in light of the United States attorney's "scope certification" of the employee.[4] The United States has conceded that the courts may review

such "scope certification." *See Defendant's Response To Court's Sua Sponte Order*, filed June 17, 1992, at 2–3; *see also Arbour v. Jenkins*, 903 F.2d 416, 421 (6th Cir.1990) (holding that a plaintiff who is dissatisfied with a "scope certification" may challenge the certification in court).[5]

### B. *The Applicable Law*

The next question is how should this Court make the scope of employment determination. Implicit in the decisions of the federal circuit courts and in the statute is the conclusion that the district court itself should make the determination of whether the employee was acting within the course and scope of employment. *See e.g., Mitchell v. Carlson*, 896 F.2d 128, 131 and n. 2 (5th Cir.1990); *see also* 28 U.S.C. § 2679.

■ More specifically, the statute states that the district court may find and certify that a federal employee was acting within the scope of employment when the United States Attorney has refused to so certify. *See* 28 U.S.C. § 2679(d)(3). Additionally, if in such a situation the district court finds that the employee was not acting within the scope of his employment, the district court must remand the proceeding to state court. *See id.* Therefore, when a district court declines to follow the "scope certification" of the United States Attorney, the district court presumably should likewise remand the action to state court.[6]

■ Although neither of the parties raised the issue of the law applicable to the scope of employment question, this Court must try to give proper effect and construction to the Westfall Act and the FTCA. Based upon the implications of a very brief decision of the United States Supreme Court, various circuit courts have

---

**3.** From his testimony, the agent appears to have obtained an approximately two-year deferred adjudication of his charged offense.

**4.** Because the United States has argued that the agent was acting within the scope of his employment at the time of the accident, the United States is estopped from arguing otherwise in any subsequent administrative or judicial proceedings related to this accident.

**5.** This Court does note that any other result would be an encroachment upon the powers of the federal courts under Article III of the United States Constitution.

**6.** The Fifth Circuit has suggested that the district courts can remand for lack of jurisdiction in cases in which the United States Attorney *has* issued a "scope certification." *See Mitchell v. Carlson*, 896 F.2d at 131 n. 2.

concluded that the determination of whether an employee is acting within the scope of his employment is based upon the law of the state where the conduct occurred. *See generally: Arbour v. Jenkins*, 903 F.2d 416, 421–422 (6th Cir.1990); *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1542 (11th Cir.1990); (all of these cases refer to *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955)).[7]

Based upon recent decisions of the Supreme Court and of the Fifth Circuit and the recent enactment of the Westfall Act, this Court believes that a more uniform approach should be applied by the federal courts to determine if a *federal* employee was acting within the scope of his or her employment under the Westfall Act and the FTCA.

In *Community For Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), the Supreme Court emphasized that in past cases it had concluded that Congress intended terms such as "employee," "employer," and "scope of employment" in the Copyright Act to be understood based upon the general common law of agency, rather than on the law of any particular State. *See id.*, 490 U.S. at 740, 109 S.Ct. at 2173 (citations omitted); *accord Easter Seal Society v. Playboy Enterprises*, 815 F.2d 323, 335 (5th Cir.1987). The Court specifically stated that the Copyright Act nowhere defines the term "scope of employment." *See id.*, 490 U.S. at 740, 109 S.Ct. at 2172. Likewise, the Federal Tort Claims Act nowhere defines the term "scope of employment." The Court recognized that "federal statutes are generally intended to have uniform nationwide application." *See id.* (citing *Mississippi Band*

of *Choctaw Indians v. Holyfield*, 490 U.S. 30, 43, 109 S.Ct. 1597, 1605, 104 L.Ed.2d 29 (1989)). The Court found that establishment of a federal rule of agency is "particularly appropriate" because of the Copyright "Act's express objective of creating national uniform copyright law by broadly pre-empting state statutory and common-law regulation." *See id.*

In a more recent case involving the definition of "employee" under ERISA, the Supreme Court adopted the same federal common law approach to determine the meaning of "employee" under ERISA. *See Nationwide Mutual Insurance Co. v. Darden*, — U.S. —, — and n. 3, 112 S.Ct. 1344, 1348 and n. 3, 117 L.Ed.2d 581 (1992). The Court specifically declined to look to state law. *Id.* at n. 3. Acknowledging a federal common law, the Court applied the general common law of agency. *See id.*

The Fifth Circuit has applied federal law to determine who is an employee under the FTCA. Under 28 U.S.C. § 1346(b), whether a person qualifies as a federal employee is to be determined according to federal law, not the law of the state. *See LeFevere v. United States*, 362 F.2d 352, 353 (5th Cir.1966); *see also Blackwell v. United States*, 321 F.2d 96, 98 (5th Cir.1963). The courts should apply federal law to this issue because the federal statutes control. *See Blackwell*, 321 F.2d at 98. Although not expressly so stating, the Supreme Court applied federal law in holding that a civilian employee who is also a military member of the National Guard is not an "employee" of the United States under the FTCA. *See generally, Maryland v. United States*, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965).

---

**7.** The entire opinion of the United States Supreme Court states:

   This case is controlled by the California doctrine of respondeat superior. The judgment is vacated and the case remanded for consideration in the light of that governing principle.

*Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). The underlying action in *Williams* involved the issue of whether a soldier in the United States Army was acting "in the line of duty" under the Federal Tort Claims

Act. *See Williams v. United States*, 215 F.2d 800, 807 (9th Cir.1954) *vacated* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). The Ninth Circuit implied that federal courts should "not be bound by local decisions but should apply their own standards" when determining the relationship of the United States Government to its employees. *See id.* at 807. The Ninth Circuit did assume that the "law of the place" should be applied to determine if the doctrine of *respondeat superior* should apply to a civilian government employee. *See id.*

Indeed, it would be contrary to the purposes of the Westfall Act and the FTCA to permit state law to determine whether an individual is or is not an "employee" of the United States. To allow for inconsistent adjudications and rules of law on the "employee" status would not further the goals of the Act. As a matter of federal law, the federal courts must apply and establish uniform guidelines to determine whether a person is an "employee" of the United States.

Since the concept of course or scope of employment is enmeshed within the employee-employer relationship and the same general principles of agency law, federal courts should also apply and establish uniform and consistent legal standards to determine whether a federal employee was acting within the scope of employment. The application of such a rule would establish a more consistent and comprehensible set of guidelines for all parties involved in these actions. This division between the applicability of federal law to determine the scope of employment and of the "law of the place" to determine the liability for the particular conduct is much more consistent with the goals and purposes of the FTCA and the Westfall Act.

Additionally, the Westfall Act's express purpose is to protect federal employees from liability for negligence. The Act only covers employees of the United States or instrumentalities thereof, but not employees of any contractor with the United States. *See* 28 U.S.C. § 2671. The Act specifically permits the official in an administrative procedure to determine whether an employee was acting within the scope of his or her employment. *See* 28 U.S.C. § 2672. The Act nowhere expressly states that the "scope of employment" should be determined according to the law of the state in which the conduct occurred.

The Act does refer to 28 U.S.C. § 1346(b). Part of the Federal Tort Claims Act, Section 1346(b) provides in pertinent part that:

... the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ..., for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [United States] Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*

28 U.S.C. § 1346(b) (emphasis added). This statute also does not define scope of employment. The reference to "the law of the place where the act or omission occurred" must refer to the question of liability of an individual for the act or omission causing the injury. For example, if the harm was not caused by the employee, the individual so acting would not be liable. This language does not directly implicate state law to determine the scope of employment issue. Instead, the express language implicates the state law only to determine liability for the act or omission. The language equates the general liability for the conduct with the law of the place but this language does not directly address the *respondeat superior* liability of the United States.

The inclusion of the specific reference, "acting within the scope of his office or employment," would be unnecessary if the state law of *respondeat superior* is interpreted to apply. If the scope of employment language had been omitted, then the language referring to the law of the place would more logically be applicable to the *respondeat superior* question. Under the doctrine of vicarious liability, an employer is only liable for those torts committed by its employees while acting within the scope of employment. By expressly including the scope of employment language in this provision, Congress has indicated that this element should be determined separately and distinctly from the law of the place. Such a distinction gives effect to all of the words used in the statute.

In the same statutory section that delineates the procedures for obtaining and reviewing the scope of employment certifica-

tion of an employee of the United States, the Westfall Act does not expressly limit the resolution of the scope of employment issue to the law of the state where the accident occurred. *See* 28 U.S.C. § 2679. This section of the FTCA expressly provides:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission *of any employee of the [United States] Government while acting within the scope of his office or employment* is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim against the estate of such employee.....

28 U.S.C. § 2679(b)(1) (emphasis added).[8] This section of the FTCA does not expressly or implicitly state that the scope of employment issue should be determined according to the law of the state where the incident occurred. Interpreting this provision along with Section 1346(b) implies that the above analysis is correct because Congress did not include any provision in Section 2679(b)(1) referring to the law of the place.

Section 2675(a) mandates a resort to the administrative process before a claimant can bring a judicial action against the United States for harm caused by a federal employee acting within the scope of his employment. Again, this provision does not limit the acting within the scope of employment to the law of the place.

In another section the FTCA states that:

> *The United States shall be liable,* respecting the provisions of this title relating to tort claims, *in the same manner and to the same extent as a private individual under like circumstances,* but shall not be liable for interest prior to judgment or for punitive damages....

28 U.S.C. § 2674. Regarding the applicable law, this provision implies no more than does Section 1346(b). The United States Supreme Court thoroughly explained that this provision's "effect is to waive immunity from recognized causes of action and was not to visit the [United States] Government with novel and unprecedented liabilities." *See Feres v. United States,* 340 U.S. 135, 142, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950). This language addresses the liability for the conduct causing the harm and not *respondeat superior* liability. The Court stated that 28 U.S.C. § 1346(b) "recognizes and assimilates into federal law the rules of substantive law of the several states...." *Id.* Section 2674 does refer to the law of the place. However, such a reference applies to the liability for the actual act or omission itself and does not refer the scope of employment issue. The close similarity of this language with that in Section 1346(b) supports the conclusion that state law should be used only to determine the basic liability for the conduct causing the harm. In Section 2674, the FTCA does imply that the United States shall be liable for conduct that would be remediable against a private person. This implication does not refer to the scope of employment issue.

Later in the FTCA, when Congress need only have referred to Section 1346(b), Congress expressly included the scope of employment limitation without any reference to the law of the state where the conduct occurred. *See* 28 U.S.C. § 2679(b)(1). If Congress had only referred to Section 1346(b) and not included the express language referring to the scope of employment, the law applicable to the scope of employment issue would have been more ambiguous. Because Congress did not specify or define the method to construe the scope of employment of a federal employee; because the FTCA is logically presumed to have a consistent nationwide application; and, because the goal of effectively indemnifying federal employees acting within the scope of their employment

---

**8.** Though only directly referring to the operation of government vehicles, the earlier version of this subsection contained similar language concerning scope of employment. The prior version, old Section 2679(b), did not contain any express reference to the law of the place.

should be uniform and consistent: the applicable law should be the general common law of agency, and not the law of the state where the conduct occurred.

The Westfall Act itself supports the application of a general common law to determine the scope of employment issue:

> The United States, through the Federal Tort Claims Act, is responsible to injured persons for the common law torts of its employees *in the same manner in which the common law historically has recognized the responsibility of an employer for their torts committed by its employees within the scope of their employment.*

Federal Employees Liability Reform And Tort Compensation Act of 1988, Pub.L. 100–694, § 2(a)(2), 1988 U.S.C.C.A.N. (102 Stat.) 4563 (emphasis added). This statement implies that Congress intended the courts to apply the traditional, "historic," common law of agency. Also, Congress again specifically include the language "within the scope of their employment" without any reference to the law of the place. Supporting such a conclusion is the purpose of this Act:

> to protect Federal employees from personal liability for common law torts *committed within the scope of their employment,* while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States.

*Id.* at § 2(b). Therefore, the purposes of the Act are: (1) provide protection from personal liability for federal employees who were acting in the scope of their employment; and, (2) to compensate persons injured by the common law torts of such employees. The distinction urged by this Court between the application of law in giving the best effect to these two purposes Act better effectuates both of these goals.

Federal employees, especially federal agents, might travel extensively. They often travel to many different states. If based exclusively upon the law of the state in which the harm occurred, the federal courts could reach contrary conclusions regarding the scope of employment issue of a federal employee under similar facts and circumstances. These acts were designed to insulate federal employees acting within the scope of their employment from tort liability, as well as provide a remedy for harmed victims. If the victim could recover for the employee's conduct under the applicable state law, then the victim can recover the damages from the United States. By applying the distinction discussed above, the federal courts could more consistently promote both goals of these acts. Federal employees would receive more consistent and uniform indemnification by the United States, and the injured persons would still be permitted to recover for the harm they have suffered in accordance with the law of the state. The "law of the place" should indeed be used to determine liability for the actual act or omission. This distinction between the applicability of state law and federal law is the most consistent, efficient, and pragmatic construction of the language and purpose of the FTCA. As discussed above, the statutory language of the Westfall Act and the FTCA supports this distinction.

The Westfall Act states that the remedy provided by the Act against the United States for damages resulting from the negligent or wrongful act or omission of any employee of the [United States] Government while acting within the scope of his [or her] office or employment is exclusive. *See* 28 U.S.C. § 2679(b)(1). "Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred." *See id.* If a federal employee was within the scope of his or her office or employment when the accident occurred, then any claims for damages may only be pursued against the United States pursuant to the FTCA. The goal of the act is to shield federal employees acting within the scope of employment.

Recently amending the FTCA, the Westfall Act[9] demonstrates the dual goals of Congress of insulating federal employees and compensating the victims. Although the Legislative History to this Act indicates the awareness of Congress to the Supreme Court's earlier interpretation that the law of the state where the accident occurred should determine the scope of employment issue, the Westfall Act itself does not expressly or implicitly adopt such a construction. *See* H.R.Rep. No. 100–700, 100th Cong., 2d Sess., *reprinted in* 1988 U.S.C.C.A.N. 5945, 5949.

## III. GENERAL COMMON LAW OF AGENCY

The inclination of the courts has been to expand the doctrine of *respondeat superior* or scope of employment:

"What has emerged as the modern justification for vicarious liability is a rule of policy, a deliberate allocation of the risk. The losses caused by the torts of employees, which as a practical matter are sure to occur in the conduct of the employer's enterprise, are placed upon the employer because, having engaged in an enterprise, which will on the basis of all past experience involve harm to others through the torts of employees, and sought to profit by it, it is just that he, rather than the innocent injured plaintiff, should bear them; and because he is better able to absorb them, and to distribute them, through prices, rates or liability insurance, to the public, and so to shift them to society, and the community at large. Added to this is the makeweight argument that an employer who is held strictly liable is under the greatest incentive to be careful in the selection, instruction and supervision of his servants, and to take every precaution to see that the enterprise is conducted safely...."

Prosser and Keeton, *Prosser And Keeton On Torts*, § 69, 500–501 (5th ed. 1984)

(footnotes omitted). When an employee departs from the business of the employer to pursue personal business, the employee is not within the scope of employment. *Id.* § 70 at 503. If the employee has an intent, even a subordinate one, to serve the employer's purpose, the employer may be liable for conduct otherwise within the employer's purpose. *Id.* Courts have shifted their focus to the foreseeability of the employee's deviation, resulting in employer liability "for torts occurring within the "zone of risk" within which the servant might reasonably be expected to deviate, even for purposes entirely" personal to the employee. *Id.* at 504. Time and distance become controlling factors in this determination. *Id.* There is general agreement that:

... the master will be liable at least for those slight departures from the performance of the work which might reasonably be expected on the part of servants similarly employed, and that the foreseeability of such deviations is an important factor in determining the "scope of employment."

*Id.* at 504–505 (footnote omitted).

The foreseeability of the accident would have been reasonable to the employer in this case. Whenever an employee is on a business trip and entrusted with a vehicle of the owner, the employer must reasonably expect that an accident could occur. Although the employer might not expect the employee to become intoxicated and then drive, such an event is not unforeseeable. Indeed, the employer should not be allowed to absolve itself of all the liability merely because its employee is legally intoxicated. Employers should be encouraged to exercise greater care and responsibility to prevent such accidents through training programs and other internal procedures. To allow an employer to escape liability based upon an employee's intoxi-

---

**9.** The Westfall Act was officially named the "Federal Employees Liability Reform and Tort Compensation Act of 1988". *See* Federal Employees Liability Reform And Tort Compensation Act of 1988, Pub.L. No. 100–694, § 1, 1988 U.S.C.C.A.N. (102 Stat.) 4563. The Act is known as the "Westfall Act" because Congress enacted it in response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988).

cation would disserve the public policy behind the doctrine of *respondeat superior*.[10]

■ Under the unique facts and circumstances of this action, the principles of general agency law compel a finding that the EPA employee was acting within the scope of his employment at the time of the accident. Solely because one of its employees becomes intoxicated during the course of a business trip, the employer should not be absolved of its responsibility in exercising prudence in providing its own vehicles for use by its employees on such trips. In this case, the agent was on a special mission, at all times subject to and under the direction of the Government. Also, such a negligent employee does not escape from his or her own responsibility. Indeed, the employer's own means of punishment could include termination of the employee with a corresponding loss of benefits. Additionally, such an employer could seek contribution from the employee.

## II. TEXAS LAW REGARDING SCOPE OF EMPLOYMENT

Because application of general agency law to the scope of employment law may be disagreed with by the appellate courts, this Court will alternatively apply the "law of the place," the State of Texas, to determine whether the EPA employee was acting within the scope of his employment at the time of the accident. The Texas Supreme Court has enumerated the following factors to determine whether an employee was acting within the course and scope of employment of his or her employer:

(1) Was the employee acting within the general authority given him by his employer?

(2) Was the employee acting in furtherance of the master's business? and,

(3) Was the employee acting for the accomplishment of the object for which he is employed?

*See Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 359 (Tex.1971). When rebutted by evidence, mere ownership of the vehicle involved in a collision and employment of the driver of the vehicle do not create the inference that the driver was acting within the course and scope of employment. *See id.* Although such an inference or presumption is recognized in Texas, the presumption is eliminated once rebutted by positive evidence to the contrary. *See id.* at 358.[11] However, this Court will consider ownership of the vehicle as evidence in deciding the scope of employment issue.

In *Robertson Tank Lines*, the Texas Supreme Court held that there was no direct evidence to support a conclusion that the defendant truck driver was acting within the course and scope of his employment. *See Robertson Tank Lines*, 468 S.W.2d at 356 and 359–360. In that case, after having completed a delivery from Corpus Christi to Odessa, the driver had been instructed to return the empty truck to Corpus Christi. *Id.* at 357. Instead of proceeding directly to Corpus Christi, the driver traveled in the opposite direction to visit his father and a cousin, and for twelve hours the driver and the others visited various establishments at which they drank beer. *Id.* At approximately 11:30 p.m. during the nighttime, the driver left the truck, without its lights on, parked along the side of a road. *Id.* at 356 and 357. Shortly thereafter, when the deceased victim collided with the rear of the unlit truck, the driver and his cousin were inside a nearby cafe drinking coffee. *Id.* at 357. The driver had intended to proceed from there to his father's residence to spend the night. *Id.*

---

**10.** "[T]he assumption of such responsibility is a fair price for the owner to pay for the privilege of having the car operated, at the cost of taxpayers, over the expensive highways of the state." Prosser and Keeton, § 73 at 523.

**11.** This Court notes the irregularity of this case because this presumption normally is applied for the benefit of the plaintiff. Because the plaintiff has produced evidence to rebut that the defendant agent was acting within the scope of his employment, this Court will not make such a presumption. This Court does conclude that some weight should be given to the United States attorney's certification and assertion that the agent was acting within the scope of his employment.

In *Robertson Tank Lines,* the Texas Supreme Court held, as a matter of law, that the truck driver was not acting within the scope of employment. *See id.* at 360. The Texas court discussed its prior holding that a truck driver was not within the scope of employment in a similar situation. *See id.* (citing to *Southwest Dairy Products Co. v. De Frates,* 132 Tex. 556, 125 S.W.2d 282 (1939)). Returning to his route after having diverted from it to go home for supper, the truck driver in *De Frates* was held as a matter of law to be outside the scope of his employment even though he was driving his employer's vehicle and was returning to his route. *See Robertson Tank Lines,* 468 S.W.2d at 360. The Texas Supreme Court emphasized that the test of an employer's liability is whether the employee was engaged in his employer's business and not whether the employee intended to resume such activity. *See id.*

Applying Texas law, the Fifth Circuit has stated:

> the test of a master's liability for the negligent acts of his servant is whether the master had the right and power to direct and control the servant in the performance of the causal act or omission at the very instant of the negligence.

*Pilgrim v. Fortune Drilling Co., Inc.,* 653 F.2d 982, 986 (5th Cir.1981) (citations omitted). Unlike *Pilgrim,* the agent was, at all times during his stay in Austin, subject to the direction and control of his superiors. *See id.* at 986–987.[12] The agent's investigation constituted a "business trip" that continued from the time of his assignment to Austin until he was instructed to leave Austin.

In the present situation, the agent was engaged in his employer's business. Except for his special assignment, the agent would not have been in Austin. The government has not been shown to have placed any special restrictions on his operation of the government vehicle. His employer did not forbid its employees to consume alcohol. His employer should shoulder some of the responsibility for the employee's negligence. The agent was still on assignment at the time of his accident. Presumably, at all times during his assignment, the agent was subject to the control of his superiors.

The Texas Supreme Court has held that an employee who intentionally assaults another because of personal animosity was not acting within the scope of his employment because there was no close relation between the assault and the duties of the performance. *See Texas & P. Ry. Co. v. Hagenloh,* 151 Tex. 191, 247 S.W.2d 236, 242 (1952) (in anger, the employee stepped aside from his duties and struck the victim). The Texas court referred to an earlier case in which it had held that an employee bus driver who had assaulted another was acting within the scope of his employment. *Id.* 247 S.W.2d at 241 (referring to *Houston Transit Co. v. Felder,* 146 Tex. 428, 208 S.W.2d 880 (Tex.1948)). In *Houston Transit,* the court held that an employer is liable for the willful and malicious acts of his employee when done within the scope of his employment. *Houston Transit,* 208 S.W.2d at 881 (citations omitted). Even if such an act if isolated would not be imputable to the employer, an act is attributable to the employer when they are so connected with and arise because of another act of the employee attributable to the employer. *Id.* The court held that an employee's assault was so closely connected with the duties of his employer that the employee driver could be held to have acted within the scope of his employment. *Id.*

In the present situation, the employee's conduct is not alleged to have been intentional. Because the agent's conduct was connected closely enough to his duties to his employer, the agent was acting within the scope of his employment. The agent was on a special mission for his employer.

Analysis of scope of employment under the current Texas Workers' Compensation

---

12. Unlike another Texas case, there is undisputed evidence that the Government did have a right to control the conduct of the agent. *See Pilgrim,* 653 F.2d at 987–988 and n. 11 (citations omitted). Distinguishable from most of the Texas cases, the present situation does not involve an employee's merely "going to and from work." *See id.* at 988. The agent was "at work" throughout the investigation in Austin.

Law can help settle this issue. This Texas statute defines "[c]ourse and scope of employment" as:

> ... an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes activities conducted on the premises of the employer or at other locations. The term does not include:
>
> (A) transportation to and from the place of employment unless:
>
> > (i) the transportation is furnished as a part of the contract of employment or is paid for by the employer;
> >
> > (ii) the means of such transportation are under the control of the employer; or
> >
> > (iii) the employee is directed in his employment to proceed from one place to another place; or
>
> (B) travel by the employee in the furtherance of the affairs or business of his employer if such travel is also in furtherance of personal or private affairs of the employee unless:
>
> > (i) the trip to the place of occurrence of the injury would not have been made had there been no affairs or business of the employer to be furthered by the trip; and
> >
> > (ii) the trip would not have been made had there been no affairs or business of the employer to be furthered by the trip.

Tex.Rev.Civ.Stat.Ann. art. 8308–1.03, (12) (Vernon Supp.1992) (emphasis added). Clearly, the agent would not have been in Austin had he not been assigned to participate in the criminal investigation in that city. This statute does expressly exclude the liability of the insurer for compensation to the injured employee if "the injury occurred while the employee was in a state of intoxication." *See id.* at art. 8308–3.02. This exclusion of liability does not exclude an intoxicated employee's activities from falling within the course or scope of employment.

In a recent case construing the scope of employment rule in a worker's compensation case, the Texas Supreme Court held that two employee's who were seriously injured, one died, traveling to a required safety meeting were not covered by the worker's compensation act because the two employees had not yet begun work. *See Evans v. Illinois Employers Insur.,* 790 S.W.2d 302, 305 (Tex.1990). The court held that the employees journey fell "squarely within the "coming and going" rule." *Id.* In *Evans* the employer had neither supplied the transportation to the employees nor compensated the employees for the travel time, nor did the employer exercise any control over the employees. *Id.* In the present case, the agent was not "coming or going" to a normal job for a normal workday. The agent was on the job during the entire investigation in Austin.

## V. CONCLUSION

In the present situation, the EPA agent would not have been in Austin but for the orders of his superiors. He would not have been in the general region of the accident but for his orders. Perhaps if he had not been on the mission for his employer, he would not have consumed so many alcoholic beverages late at night. He most assuredly would not have been driving a government car specifically assigned to him.

Under the general common law of agency and the law of Texas, the agent of the federal government was acting within the scope of his employment at the time of the car accident based upon the facts of this case. Pursuant to orders from his superiors, the agent was in town on a special criminal investigation. The investigation was ongoing at the time of the accident. The agent was driving the specific car owned by the government and assigned to him for his use during his mission. Although the agent was intoxicated at the time of the accident, he was acting close enough in time, space, and purpose to his investigation to have been acting within the scope of his employment.

IT IS THEREFORE ORDERED that the Plaintiff's Motion to Remand is DENIED.

IT IS FURTHER ORDERED that because the plaintiff has failed to pursue his administrative remedies as required by the FTCA, the United States Motion To Dismiss is GRANTED. *See* 28 U.S.C. § 2675(a); *see also Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir.1987). As in this case, when the United States is substituted as the party defendant, the plaintiff's limitations for filing his administrative claim is tolled 60 days following the dismissal of this action. *See* 28 U.S.C. § 2679(d)(5).

ACCORDINGLY, IT IS ORDERED that this cause of action is DISMISSED.

All other pending motions are hereby DENIED AS MOOT.