### Robert WEAVER, et al.

v.

### The UNITED STATES COAST GUARD and the United States of America.

#### No. G–93–128.

United States District Court,
S.D. Texas,
Galveston Division.

June 30, 1994.

---

Ralph D. Huston, Richard Lee Melancon, Schechter & Associates, Galveston, TX, for Robert Weaver, Lucille Weaver, Kenneth Weaver, Donna Weaver.

Daniel David Hu, U.S. Attys. Office, Houston, TX, for U.S.

George P. Pappas, McLeod Alexander Powel & Apffel, Galveston, TX, for Mini Inc.

### *ORDER GRANTING SUMMARY JUDGMENT*

KENT, District Judge.

Before the Court is the Defendant United States of America's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or for summary judgment under Rule 56(c). This action is brought under the Federal Torts Claims Act (FTCA), 28 U.S.C. §§ 2671–2680, for damages arising out of a tragic automobile accident caused by drunken Coast Guardsman Mark David Brown. The seminal issue is whether Brown was acting within the scope of his employment at the time of the accident. Because the viability of the Plaintiffs' claims that are based upon this seminal issue is inextricably bound with the issue of subject matter jurisdiction, the Court must treat the corresponding portion of the Government's motion as one for summary judgement. *Tindall v. United States*, 901 F.2d 53, 55 n. 5 (5th Cir.1990) (per curiam). So is it for the remaining issue of whether the Government is liable for the negligent omissions of Coast Guardsman Michael A. Bray in failing to prevent Brown's actions. For the reasons stated below, the Court resolves both issues in the negative and consequently GRANTS the Government's motion.[1]

---

[1] The Government correctly argues that the United States Coast Guard should be dismissed as a Defendant in this action because it is an improper party (which the Plaintiffs do not counter). Consequently, the United States Coast Guard is

### I. SUMMARY JUDGMENT

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is an authentic issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact finder could decide in favor of the nonmoving party. *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a motion for summary judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in its favor. Credibility determinations, the weighing of evidence, and the drawing of reasonable inferences are all left to the trier of fact. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts...."

---

DISMISSED. Additionally, since the Government's third-party complaint against Mini, Inc. is for contribution, the third-party complaint is also DISMISSED.

[T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue for trial.*" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(c)) (emphasis original).

## II. FACTS

Machinery Technicians First Class Mark David Brown and Michael A. Bray were assigned to the USCGC Buttonwood, which had been engaged in a ten- to fourteen-day stressful and vigorous oil containment operation before it returned to home port in Galveston, Texas, during the late hours of June 20, 1990. Brown asserts that he remained on board that night, although Bray testified that Brown went out.[2] Bray also testified that Brown reported late to muster on the morning of June 21 and was tired and smelled strongly of alcohol.

Around 2:00 p.m. on June 21, the men aboard the Buttonwood were given four hours to run personal errands. They were admonished to return to the ship sharply at 6:00 p.m., when it would set sail for its next potentially lengthy assignment. Brown and Bray promptly departed from the Buttonwood and bought two six packs of beer at the base exchange. They began drinking the beer immediately after they left the base, as Brown drove Bray and two other men in his truck to take care of their personal business. The men consumed several more drinks at Bray's home before traveling to Porky's Cabaret where they consumed even more alcohol. By the time he began his return trip to the Buttonwood at about 5:30 p.m., Brown had consumed approximately 6 beers and possibly one mixed drink. Then, at 6:00 p.m. as he hastily drove himself and Bray back to the Buttonwood, Brown collided into the Plaintiffs' decedents' car, killing all three family members inside.

Brown is currently incarcerated after pleading nolo-contendere to three counts of involuntary manslaughter and two counts of aggravated assault.

## III. DISCUSSION

The Plaintiffs assert several theories of liability. First, they assert that the Government is liable for Brown's negligent acts because he was acting in the scope of his office or employment when the accident occurred: either during the entire four-hour liberty or at least when he was returning to the Buttonwood pursuant to orders. Second, the Plaintiffs assert that the Government is liable for Brown's acts because he was on a special mission for the Government. Third, the Plaintiffs assert that the Government is liable because Bray acted negligently.[3]

## A. NEGLIGENCE OF BROWN

When the United States is sued under the FTCA for the negligent acts of military personnel, it is only liable for acts committed in the "line of duty." 28 U.S.C. §§ 1346(b), 2671. This line-of-duty determination is governed by state respondeat-superior laws, *Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955) (per curiam); *Skipper v. United States,* 1 F.3d 349, 352 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1220, 127 L.Ed.2d 566 (1994); *Garza v. United States,* 809 F.2d 1170, 1171 (5th Cir.1987), but considered in light of the "special factors characteristic of military activity and discipline." *Bettis v.*

**2.** Bray also testified that Brown told him that he drank a bottle of tequila the night of June 20. But, this evidence is clearly hearsay under Federal Rule of Evidence 801 and thus must be excluded from consideration under Rule 802.

**3.** The Plaintiffs' complaint also alleges that the Government is liable because it should not have granted liberty to Brown but instead should have restricted him to the vessel or the base. The Government moves to dismiss these claims under the discretionary function exception to the FTCA. The Plaintiffs' complaint further alleges that the Government should not have sold beer to Brown or Bray at the base exchange. The Government moves for summary judgment on this claim on the ground that neither Brown nor Bray was obviously intoxicated. The Plaintiffs have failed to respond to the Government's motion to dismiss either of these claims and thus must not oppose the dismissal of those portions of their complaint. Moreover, the Court agrees with the Government's position. Consequently, these claims are DISMISSED WITH PREJUDICE.

*United States,* 635 F.2d 1144, 1147 (5th Cir. 1981); *Hinson v. United States,* 257 F.2d 178, 181 (5th Cir.1958); *contra Brotko v. United States,* 727 F.Supp. 78, 80–81 (D.R.I. 1989) (noting that several circuits other than the Fifth have declined to consider the special factors characteristic of military employment in determining the scope of employment under the FTCA).[4]

> In Texas,
>
> [t]he test ... for determining a master's liability for the negligent acts of his servant is "whether on the occasion in question, the master has the right and power to direct and control the servant in the performance of the causal act or omission at the very instance of its occurrence." To show the requisite degree of control, the act must be "done within the general authority of the master in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed."

*Chevron, U.S.A., Inc. v. Lee,* 847 S.W.2d 354, 355 (Tex.App.—El Paso 1993, no writ) (quoting first *Wilson v. H.E. Butt Grocery Co.,* 758 S.W.2d 904, 907 (Tex.App.—Corpus Christi 1988, no writ) and *Parmlee v. Texas & New Orleans R.R.,* 381 S.W.2d 90, 93 (Tex.Civ.App.—Tyler 1964, writ ref'd n.r.e.) and quoting second *London v. Texas Power & Light Co.,* 620 S.W.2d 718, 719–20 (Tex. Civ.App.—Dallas 1981, no writ)).

■ As for the special factors characteristic to military service, one factor which could be determinative of the scope-of-employment issue is whether the servicemember was traveling pursuant to specific orders when the negligent act was committed. *See Hall-berg v. Hilburn,* 434 F.2d 90 (5th Cir.1970) (finding a soldier in the line of duty when he began the last leg of his journey to report for duty at a new permanent station under orders, had his orders in hand, was dressed in uniform, and had adequate military clothing to perform any duties which might be required by reason of his permanent station change, even though the soldier had taken off the previous several days to settle into his new home with his family); *United States v. Culp,* 346 F.2d 35 (5th Cir.1965) (per curiam) (finding a soldier in the line of duty when he was traveling under orders for a permanent change of station, was compensated for his travel time, was paid travel allowance in advance, and was even allowed to travel by private conveyance); *Hinson v. United States,* 257 F.2d 178 (5th Cir.1958) (finding a soldier in the line of duty under Georgia law when he was traveling to his first assignment pursuant to orders which specified that he proceed immediately from his home to the assignment location).

Another factor is whether the servicemember was governed by specific military regulations, enforceable by military punishment and designed precisely to govern the conduct in which the servicemember was engaged at the time of the accident. *See Craft v. United States,* 542 F.2d 1250 (5th Cir.1976) (finding a soldier in the line of duty when he injured a child while mowing the lawn around his base housing pursuant to orders which assigned specific duties to all base residents to assist in maintaining the housing units); *Washington v. United States,* 868 F.2d 332 (9th Cir.) (finding two soldiers, who injured a child on base housing, in the line of duty when they

---

4. The Plaintiffs urge the Court to apply federal respondeat-superior common law to determine whether Brown was acting within the scope of his employment. *See Garcia v. United States,* 799 F.Supp. 674, 676–81 (W.D.Tex.1992) (applying federal common law), *aff'd on other grounds,* 22 F.3d 609 (5th Cir.1994). But, controlling Supreme Court and Fifth Circuit law mandate that this Court apply Texas state-law principles of respondeat superior. *Williams,* 350 U.S. at 857, 76 S.Ct. at 100; *Garza,* 809 F.2d at 1171; *see Kendrick v. United States,* 854 F.Supp. 453, 456 n. 2 (E.D.Tex.1994) (specifically declining to follow *Garcia*'s application of federal common law). Moreover, the Plaintiffs do not explain how the application of federal common law would be more advantageous to their position, especially in light of the Fifth Circuit's pronouncement that a line-of-duty determination under the FTCA must take into account the special characteristics of military service, *Bettis,* 635 F.2d at 1147, *Hinson,* 257 F.2d at 181, and also in light of Texas courts' reliance upon the Restatement (Second) of Agency (1958). *See, e.g., Dickerson v. Reeves,* 588 S.W.2d 854, 856 (Tex. Civ.App.—Eastland 1979, writ ref'd n.r.e.); *Best Steel Bldgs., Inc. v. Hardin,* 553 S.W.2d 122, 128 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Dictaphone Corp. v. Torrealba,* 520 S.W.2d 869, 872 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).

violated specific military regulations regarding base-housing security which were enforced through military punishment), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 536 (1989); *Lutz v. United States,* 685 F.2d 1178, 1183 (9th Cir.1982) (following *Craft* and finding a soldier, whose dog bit a child on base, in the line of duty because he violated specific military regulations regarding pet control on base which were enforced through military punishment); *contra Nelson v. United States,* 838 F.2d 1280, 1283–84 (D.C.Cir.1988) (criticizing *Lutz* explicitly, and *Craft* implicitly, by stating, "Under *Lutz,* all duties imposed by military regulation, no matter how trivial, could fall within the serviceman's line of duty and thus within the employer-employee relationship."); *accord Chancellor v. United States,* 1 F.3d 438, 439–40 (6th Cir.1993); *Piper v. United States,* 887 F.2d 861, 863–64 (8th Cir.1989); *Brotko,* 727 F.Supp. at 80–81.

■ An additional factor is whether the negligent servicemember was on liberty; however, this factor is not determinative of the Government's liability. *Washington,* 868 F.2d at 333.

■ The Plaintiffs' first argument is that Brown was acting within the scope of his employment during the entire four-hour liberty. The Plaintiffs assert that the Government maintained the requisite degree of control over Brown because it directed him to take care of his personal affairs and ordered him to return promptly at 6:00 p.m. The Plaintiffs emphasize that during this four-hour liberty, the Government had the general authority to direct Brown, as well as the other crew members, in the conduct of cer-

tain of their personal affairs through its command structure. Additionally, Brown's conduct was governed generally by the Uniform Code of Military Justice, which provided harsher AWOL penalties when the sailing of a vessel was involved. Moreover, the Plaintiffs urge, the four-hour liberty was crucial to the vessel and in furtherance of its mission given that it was granted between lengthy sea operations. The Plaintiffs also stress that the liberty was atypical and a mere continuation of the crew members' normal working day since the leave was granted in the middle of what otherwise would have been an ordinary work day.[5]

After careful consideration, the Court concludes that Brown was not acting within the scope of his employment. The Government did not exercise the requisite control over Brown during his liberty merely because Brown's conduct was governed generally by the Uniform Code of Military Justice and because the Government had the general authority to direct Brown in the conduct of some of his personal affairs. In fact, on this particular occasion, once reasonably granted, the Government could not have reasonably regulated Brown's conduct during the liberty or even have prohibited him from drinking during the liberty.

The Fifth Circuit in *Hinson,* 257 F.2d at 181, has looked to the Government's general control over servicemembers as a factor in finding that a soldier was in the line of duty while driving from his home to a base pursuant to orders which required him to travel immediately. On the other hand, the Ninth Circuit has stated that "[t]he unique control which the Government maintains over a soldier has little if any bearing upon determin-

---

**5.** After a formal investigation by the Coast Guard into the accident, Brown's actions were administratively labeled "MISCONDUCT, NOT LINE OF DUTY" because he "demonstrated a reckless disregard of the consequences" by driving recklessly. Bray's actions were labeled "NOT DUE TO OWN MISCONDUCT, LINE OF DUTY" because "[e]ven though he showed poor judgment by drinking and riding with a driver who had been drinking, this did not demonstrate a reckless disregard of the consequences...." The Plaintiffs contend that these findings are relevant in determining liability under the FTCA. But, the Coast Guard's line-of-duty determination was the result of an investigation designed to determine

Brown's and Bray's misconduct for administrative purposes and not their status as employees. *See Combs v. United States,* 768 F.Supp. 584, 588–91 (E.D.Ky.1991) (noting that the line-of-duty inquiry made by the Comptroller General in determining whether a serviceman was entitled to medical benefits under 10 U.S.C. § 3721(2) is different than that under the FTCA). Moreover, neither Brown's nor Bray's rights could have been adequately represented during the internal investigation. Based upon these circumstances, the Court gives no weight to the Coast Guard's findings in the present scope-of-employment determination.

ing whether his activity is within the scope of his employment." *Hartzell v. United States,* 786 F.2d 964, 969 (9th Cir.1986) (quoting *Bissell v. McElligott,* 369 F.2d 115, 117–19 (8th Cir.1966), *cert. denied,* 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967)).

Even though this Court is bound to follow the pronouncement of the Fifth Circuit in considering this factor in its scope-of-employment determination, it is clear that its importance must be resolved using a common sense approach under the totality of the circumstances. Under the circumstances of the present case, the Court finds that the general control the Government has over its service-members contributes little to a finding that the Government had the requisite control over Brown and was thus acting within the scope of his employment. To abide the Plaintiffs' reasoning in the present case would render the Government liable for virtually all negligent acts committed by any servicemember who was on liberty, making the Government a veritable global insurer of all military personnel. *See also Nelson,* 838 F.2d at 1284 (stating that to find a service-member in the scope of employment whenever any base resident acts negligently while violating a base regulation would make the Government an insurer as to all manner of bizarre incidents without limit, contrary to the FTCA's limited waiver of sovereign immunity); *accord Piper,* 887 F.2d at 863–64.

Additionally, the holdings in *Craft,* 542 F.2d at 1255, *Washington,* 868 F.2d at 334, and *Lutz,* 685 F.2d at 1183, do not support the conclusion that the Government's general military authority suffices as the requisite authority. It is clear that those courts relied heavily upon *specific* military regulations which governed the conduct of the service-members at the time of the accidents.

■ The Plaintiffs strongly urge the Court to hold the Government responsible for Brown's actions because it generally benefitted from allowing the crew liberty to take care of their personal errands. The Plaintiffs even characterize the liberty as "necessitated" by the Buttonwood's impending, potentially lengthy mission soon after its return from a vigorous operation.

The Supreme Court of Wyoming has aptly rebutted a similar argument in holding, as a matter of law, that an employee who was allowed to run to his bank during normal working hours to deposit a personal check was not in the scope of employment under the principles of the Restatement (Second) of Agency §§ 228–37 (1958):

> [I]t is not contested that [the employer's] policy to allow its employees time off for personal errands does have some benefit in contributing to the "happiness" of the employees. Nor is it contested that [the employer] expected and directed employees to use only such time as necessary to complete the personal errands. The only contest, then, is whether or ·not the policy and direction, without more, place the employee in the scope of employment. To accept [the injured party's] contention that they do would also require acceptance of the contentions that policies for employee "happiness" by allowing vacations, no Saturday work, or lunch hours, coupled with directions to return to work immediately after the end of vacation, or after one hour for lunch, or at 8:00 a.m. each working day, would place the employees in the scope of employment, without more, while on vacation, on Saturdays, during lunch hours in fact, at all times.

*Miller v. Reiman–Wuerth Company,* 598 P.2d 20, 23–24 (Wyo.1979).

In holding that a serviceman was not within the scope of his employment when he drove negligently during his lunch break, the Fifth Circuit in *Moye v. United States,* 218 F.2d 81 (5th Cir.1955), quoted:

> Although the eating of food may be necessary to keep up an employee's vitality so as to enable him to perform the duties of his employment, ordinarily, a servant cannot be said to be on his master's business or acting within the scope of his employment while eating or on his way to eat.

*Moye,* 218 F.2d at 83; *see Pilgrim v. Fortune Drilling Co.,* 653 F.2d 982, 987 (5th Cir.1981) ("It is apparent from a reading of Texas cases that the fact that the employee is on his way to work, which will mutually benefit both employer and employee, is not sufficient in and of itself to constitute a mis-

sion undertaken for the benefit of the employer. . . .”). Thus, even if the Government somehow actually incidentally benefitted from allowing the crew liberty, this benefit is not sufficient to support a finding that the crew members were acting in furtherance of the Government's business.

The Plaintiffs stress that the four-hour liberty was atypical and a mere continuation of the crew members' normal working day since the leave was granted in the middle of what otherwise would have been an ordinary work day. They assert that except for the liberty, Brown would not have been on the road at this time driving drunk. But, the Plaintiffs have cited no authority for this unreasonable proposition—that merely because an employee would normally be at work at the time of the accident, the employer should be held liable. To accept such reasoning would render employers liable for their employees' negligent acts during vacations and other personal time off.

Nor does the Court find that Brown's activities during liberty were so closely connected to that of the Government's that he was within the scope of his employment. *See Houston Transit Co. v. Felder,* 146 Tex. 428, 208 S.W.2d 880, 881–82 (1948).

■ The Plaintiffs also argue that, at the least, Brown's act of speeding back to the Buttonwood was within the scope of his employment because he was "ordered" to return to the ship at 6:00 p.m. to resume his duties. This argument must be rejected for the same reasons stated above and because it clearly falls within the coming-and-going rule, which absolves an employer from liability for the acts of an employee when the employee is merely going to or coming from work. *See, e.g., J & C Drilling Co. v. Salaiz,* 866 S.W.2d 632, 636 (Tex.App.—San Antonio 1993, no writ). The order to return to the ship promptly at 6:00 p.m. is no different than specific time requirements imposed upon private employees. As the Government argued, "Obviously, a private individual late for work may also be subject to discipline, but that mere fact doesn't place him in scope while commuting." *See Wilson,* 758 S.W.2d at 907–08 (holding that as a matter of law an employee was not within the scope of em-

ployment when she was returning home after being ordered to return to work by the employer to complete a special after-hours task and even though the employee was being reimbursed for her travel).

Further, because of the nature of military service, an order is arguably issued every time a servicemember is required to report for work at a preset time. To base liability upon these "orders" would render the Government liable anytime a servicemember acted negligently while going to work. This limitless liability would contravene the FTCA's limited waiver of liability by allowing the Government to be held responsible where a private person would not under 28 U.S.C. § 1346(b).

This situation is not like that in *Hallberg,* 434 F.2d at 91–93, *Culp,* 346 F.2d at 36; *Hinson,* 257 F.2d at 182. In those cases, the servicemen were traveling pursuant to orders which required them to drive from one location to another—the order was to *travel,* not merely to return from liberty at a specified time. The Plaintiffs argue that the Buttonwood's commander "ordered" the crew to run errands which required travel. But, a close review of the evidence reveals that the crew was merely "ordered" to get underway at 6:00 p.m. and that they were further "ordered" to return to the Buttonwood for that departure. Moreover, the crew members were not required to leave the base or even the ship.

The Court disagrees with the Plaintiffs' fallacious reasoning that at 6:00 p.m. (the time when Brown was ordered to be back at the ship), no matter where he was, Brown automatically began acting within the scope of his employment merely because his liberty expired. This argument becomes even more absurd when juxtaposed with the fact that, unbeknownst to Brown, liberty was actually extended until the next day.

To support their position the Plaintiffs cite *Vaughn v. Highlands Underwriters Insurance Co.,* 445 S.W.2d 234 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.). The Court finds *Vaughn* inapposite because it involved the determination of whether an employee was in the scope of his employment

for workmen's compensation purposes. *See Shelton v. Standard Ins. Co.,* 389 S.W.2d 290, 293 (Tex.1965) (stating that scope-of-employment rules under the Workmen's Compensation Act should be applied more liberally than scope-of-employment rules used in determining liability under respondeat superior principles); *contra Garcia v. United States,* 799 F.Supp. 674, 683 (W.D.Tex.1992), *aff'd on other grounds,* 22 F.3d 609 (5th Cir.1994) (stating that a scope-of-employment analysis under the current Texas Workers' Compensation statutes could help settle the scope-of-employment issue under the FTCA).

█ The Plaintiffs next argue that Brown was on a "special mission" during the entire four-hour liberty, or at least on the return trip to the ship, because his superiors "ordered" him to leave the ship,[6] take care of his personal business, and be back on time.

It is the general rule that use of public streets or highways in going to or returning from one's place of employment is not within the scope of one's employment. An exception to this rule is when the employee "undertakes a special mission at the direction of his employer, or performs a service in furtherance of his employer's business with the express or implied approval of his employer." When the employer does not require any particular route, the employee is not engaged in the furtherance of the employer's business.

*J & C Drilling Co. v. Salaiz,* 866 S.W.2d at 636 (citations omitted); *accord Chevron, U.S.A.,* 847 S.W.2d at 355–56.

In *Chevron, U.S.A.,* an employee was held to be on a special mission when the employer mandated that he attend a seminar which was held on the employee's normal day off. The employee drove his own car to the seminar and was paid mileage for the travel. Moreover, the court found that attendance at the seminar was for the ultimate benefit of the employer. *Id.* at 355–56. On the other hand, in *Salaiz,* an employer was held not liable as a matter of law when an employee caused an accident when he was returning to the worksite after running a personal errand, even though the employee had been on 24–

hour call and was driving a company car. *Id.,* 866 S.W.2d at 637.

The Plaintiffs also cite for support *Garcia v. United States,* 799 F.Supp. 674 (W.D.Tex. 1992), *aff'd on other grounds,* 22 F.3d 609 (5th Cir.1994), wherein an Environmental Protection Agency agent was found to be within the scope of employment under the FTCA. The agent was on a business trip when he became intoxicated and caused an accident which injured the plaintiff. The court reasoned:

> Except for his special assignment, the agent would not have been in Austin. The government has not been shown to have placed any special restrictions on his operation of the government vehicle.... The agent was still on assignment at the time of his accident. Presumably, at all times during his assignment, the agent was subject to the control of his superiors.

*Id.* at 683; *accord Fitzpatrick v. United States,* 754 F.Supp. 1023, 1034–35 (D.Del. 1991) (holding that under Delaware law a sergeant was on a special mission for the entire trip when he was required to travel in a government car to a Delaware base for a weekend assignment, became intoxicated at the officers' club, and on the way back to his motel, collided with another vehicle); *Combs v. United States,* 768 F.Supp. 584 (E.D.Ky. 1991) (finding that a serviceman was acting within the scope of his employment under almost identical circumstances as those in *Fitzpatrick* ).

Besides the Court's disagreement with the far-reaching implications of *Garcia*—that an employer is liable for virtually all of the negligent acts of an employee who is on a business trip—the Court finds that the present case is distinguishable. First, Brown was not on a special assignment of the Coast Guard, nor was he on a business trip—Brown was allowed liberty to take care of personal business. Moreover, Brown was not driving a government car, and as discussed above, the Government did not have the requisite control over his actions.

After careful consideration, the Court concludes that Brown was not on a special mis-

---

**6.** As discussed above, there actually were no or-    ders to travel.

sion at the behest of the Government for many of the reasons the Court concludes that Brown was not acting within the scope of his employment. Brown was not acting in furtherance of the Government's business, and the Government did not have the requisite control over his actions. Moreover, there is no dispute that the Government did not require Brown to follow any particular route or to even take care of any particular personal errand.[7]

All in all, the Court cannot make the quantum leap that the Plaintiffs suggest—that the mere allowance of a four-hour liberty to take care of personal business should render the Government liable for any negligent act committed by any crew member. Such a rule would impose unqualified liability upon the Government far broader than that of a private employer, contrary to the limited waiver intended by the FTCA. See Lutz, 685 F.2d at 1183. In effect, it would impose strict liability upon the Government for any acts of its military personnel. The Court wholeheartedly agrees that the Government should be absolutely accountable for the negligent acts of military personnel who are acting in the service of the Government. But, the Court does not believe that the Government should act as an insurer for all of its servicemembers.

The Court might have reached a different conclusion had there been an order to run personal errands with an implicit suggestion that the crew imbibe heavily. However, here, the Buttonwood commanders merely allowed the crew to leave the ship on a short liberty to run personal errands. No crew members were ordered or forced to run errands or even to leave the ship—they were simply allowed to do so if they wished. Under the precise circumstances of the present facts, the Court cannot find that Brown was in any way acting within the scope of his employment.

## B. NEGLIGENCE OF BRAY

■ The Plaintiffs assert that the Government is liable for the negligent acts of Bray in not reporting that Brown was visibly fa-

tigued and smelled of alcohol on the morning of June 21. The Plaintiffs argue that if Bray would have reported Brown, as was mandated by regulations, Brown would have been detained during the liberty pursuant to procedures which would have been instigated to determine Brown's condition. Thus, the Plaintiffs argue, "Brown would not have had an opportunity to leave the base, consume more alcohol, get behind the wheel of an automobile, and drive through the fateful intersection ... on June 21, 1990."

To prevail on their claim, the Plaintiffs must show that Bray's negligence proximately caused their injuries. Brown v. Edwards Transfer Co., 764 S.W.2d 220, 223 (Tex.1988). Proximate cause encompasses the elements of cause in fact and foreseeability. Id.

> Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the danger of his act to others. However, foreseeability does not require that the actor foresee the particular accident or injury which in fact occurs. Nor does foreseeability require that the actor anticipate just how the injury will grow out of a particular dangerous situation. All that is required is that the injury be of such a general character as might reasonably have been anticipated and that the injured party be so situated with relation to the wrongful act that injury might reasonably have been foreseen.

Id. at 223–24 (citations omitted).

Even if the Court concluded that Bray's omissions were the cause in fact of the Plaintiffs' injuries, it could not conclude that the Plaintiffs have raised a genuine issue of material fact regarding foreseeability. The negligence allegedly committed by Bray was his failure to report Brown's fatigued condition and smell of alcohol. Although it would have been foreseeable by Bray that Brown might have injured a fellow crew member during work, it was not at all foreseeable that Bray's failure would result in Brown being allowed liberty, becoming intoxicated, driving his car, and killing the Plaintiffs' decedents. These consequences are entirely too remote.

---

7. Because the Court concludes that Brown was not on a special mission, it need not decide whether the trip to Porky's was a deviation from that mission.

The Court also concludes, for the same reasons stated above concerning Brown, that Bray was not acting within the scope of his employment when he allowed Brown to get behind the wheel at Porky's.

## IV. CONCLUSION

As a final note, the Court encourages the Government to take a long, hard look at its present policies regarding alcohol and other drug abuse among its service personnel. Military personnel are infamous for their serious abuses, and the citizens of this great county, as well as the world, could only reap great benefits from a governmental campaign to make military personnel more aware of the dangers and destructiveness of alcohol and drugs.

The Court also expresses its deepest sympathy to the Plaintiffs for the horribly tragic loss of their loved ones, an unnecessary loss occasioned by abhorrent and detestable behavior by one who was charged with protecting and serving the citizens of this country, not charged with thoughtlessly killing them and orphaning young children. These dire circumstances are a paradigm of those which engendered the aphorism: great facts make bad law. However, this Court is not the Plaintiffs' sole means for redress or their only means of avengement for Brown's wrongs. The Plaintiffs still have their state-law claims against Brown himself and the owners of Porky's, Mini, Inc. Moreover, the military justice system can enforce the debts of service personnel as well as punish them for abominable acts such as these. Lastly, Brown himself has already been incarcerated in a state prison for his atrocious crimes.

But, even with the overwhelming pathos this Court feels for the Plaintiffs, it is bound by the law to GRANT the United States' summary judgment and DISMISS their claims WITH PREJUDICE. The United States Coast Guard is also DISMISSED WITH PREJUDICE, along with the United States' claim for contribution against Mini, Inc.

The parties are further ORDERED to file nothing further on these issues in this Court, especially motions to reconsider or the like, *unless* they can present *compelling* and *rele-*vant new evidence or legal authority which they could not, through the exercise of due diligence, have presented on original submission of these motions. *Any and all* further relief shall be sought in due course from the United States Court of Appeals for the Fifth Circuit. The parties shall each bear their own costs incurred herein to date.

IT IS SO ORDERED.