**Aleksandr Nikolaevich KASHIN, Plaintiff,**

**v.**

**Douglas Barry KENT, Defendant.**

**No. 02CV2495–LAB (WMc).**

United States District Court, S.D. California.

Aug. 26, 2004.

Peggy J. Reali, Finkelstein and Krinsk, San Diego, CA, Michael A. Ferrara, Jr., Ferrara Rossetti and Devoto, Cherry Hill, NJ, John J. Gallagher, Larisa Tenberg, Law Office of John J. Gallagher, Philadelphia, PA, for Plaintiff.

Shawn M. Hays, Law Offices of Shawn M. Hays, San Diego, CA, Matthew Wesley Carlson, J. Michael Hannon, Thompson O'Donnell Markham Norton and Hannon, Washington, DC, for Defendant.

## ORDER DENYING DEFENDANT'S PETITION FOR CERTIFICATION

BURNS, Senior District Judge.

This personal injury action arises out of an automobile accident in Vladivostok, Russia. Defendant Douglas Barry Kent ("Kent") was at that time Consul General of the United States to the Republic of Russia, and Plaintiff Aleksandr Nikolaevich Kashin ("Kashin"), a Russian national, was a passenger in one of the vehicles involved in the accident. Currently before the Court is Kent's Petition for Certification Under 28 U.S.C. Section 2679(d)(3) ("Petition"), requesting this Court to review the Attorney General's determination that Kent did not act in the scope of his office or employment at the time of the accident, certify to the contrary, and substitute the United States as a party defendant in this case. In addition, Kent seeks discovery relative to his Petition. The Government opposed the Petition, Kent replied, and the Government filed a surreply. Upon review of the foregoing, the Court finds that Kent was not acting in the scope of his office or employment at the time of the accident. Accordingly, the Petition is **DENIED.** For the reasons stated below, Kent's related request for discovery is also denied.

### *FACTUAL AND PROCEDURAL BACKGROUND* [1]

The automobile accident which gives rise to the instant action occurred on October 27, 1998, late at night when Kent was driving from the gym to his residence in Vladivostok. The accident left Kashin severely injured.

On November 5, 1998, an action was filed against Kent in Vladivostok by the Department of Internal Affairs of Vladivostok on behalf of Kashin, which sought

---

1. The background facts are not intended and shall not be construed as findings of fact by the Court.

civil and criminal remedies. The action was terminated on August 4, 1999, due to Kent's claim of diplomatic privilege. Shortly after November 5, 1998, Kashin, as well as the driver and the other passenger in the vehicle in which Kashin was riding, each brought separate private civil actions against Kent. Kashin's private action was terminated on or after July 11, 2000, based on Kent's departure from Russia.

On October 27, 2000, Kashin filed the instant action in the United States District Court for the Eastern District of Pennsylvania against Kent, the United States and the United States Department of State. On June 26, 2001, the Government moved to dismiss based on lack of subject matter jurisdiction as to the United States and the Department of State. On July 16, 2001, the Honorable John P. Fullam granted the motion based on the exception for claims arising in foreign countries, Title 28, United States Code, Section 2680(k).

On April 11, 2002, Kent filed a motion to dismiss based on lack of personal jurisdiction, insufficiency of service of process and improper venue. The motion was granted on grounds of personal jurisdiction and venue, and the case was transferred to the Eastern District of Virginia. Subsequently, Kent again moved to dismiss for lack of personal jurisdiction, insufficiency of service of process and improper venue, and the case was transferred from the Eastern District of Virginia to this district.

On February 13, 2004, Kent requested certification by the Attorney General or his designee pursuant to the FTCA that he acted within the scope of his office or employment at the time of the accident. His request was denied on March 8, 2004.

**DISCUSSION**

Kent seeks court review of the Attorney General's determination that he was not acting in the scope of his office or employ-

ment. Title 28, United States Code, Section 2679(d)(3) "specifically allows employees whose certification requests have been denied by the Attorney General, to contest the denial in court." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 431, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995). Section 2679(d)(3) provides in pertinent part as follows:

> In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

### I. *Standard of Review*

 Section 2679, a provision of the Westfall Act, which amended the FTCA in 1988, grants the Attorney General the right to decide the scope of employment issue in the first instance. *Green v. Hall*, 8 F.3d 695, 698 (9th Cir.1993)(denial of certification challenged by the defendant). "The Attorney General's decision regarding scope of employment certification is conclusive unless challenged." *Id.*, citing 28 U.S.C. § 2679(d)(1)-(4); *see also Billings v. United States*, 57 F.3d 797, 800 (9th Cir.1995); *accord Gutierrez de Martinez v. DEA*, 111 F.3d 1148, 1153–55 (4th Cir. 1997). Accordingly, the party seeking review bears the burden on a section 2679(d)(3) petition. *Green*, 8 F.3d at 699. The district court reviews the Attorney General's refusal to certify that the employee acted in the scope of employment *de novo*.[2] *Wilson v. Drake*, 87 F.3d 1073,

---

**2.** Although Kent acknowledges that the standard of review is *de novo,* he at the same time

1076 (9th Cir.1996); *Arthur v. United States,* 45 F.3d 292, 295 (9th Cir.1995).

## II. *Choice of Law*

■ The law applicable to the determination whether a government employee acted in the scope of his office or employment is "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Generally, the applicable law is the *respondeat superior* law of the state in which the alleged tort occurred. *Wilson,* 87 F.3d at 1076; *Green,* 8 F.3d at 698–99. In this case it is undisputed that "the place where the act or omission occurred" is Vladivostok, Russia. However, the law of Russia does not apply because the Congress expressly intended to avoid the application of foreign law. *See Sosa v. Alvarez–Machain,* —— U.S. ——, 124 S.Ct. 2739, 2751–52, 159 L.Ed.2d 718 (2004); *United States v. Spelar,* 338 U.S. 217, 221, 70 S.Ct. 10, 94 L.Ed. 3 (1949).

Neither party cites any binding authority to determine which law to apply in an FTCA case when the act or omission occurred abroad. Kent advocates the application of California law because he "is domiciled in and a citizen of the State of California and this action now lies in California." (Pet. at 5). He cites no law supporting this argument. The Government contends that the "general principles of United States law," as embodied in the Restatement (Second) of Agency, should apply. In support of this proposition the Government relies on the Military Claims

Act ("MCA"), Title 10, United States Code, Section 2731 *et seq.,* and the related choice of law regulations.

The scope of employment and choice of law provisions of the MCA and FTCA are similar. The operative provision of the MCA allows certain departments to settle claims against the United States for "personal injury or death either caused by a civilian officer or employee of that department ... acting within the scope of his employment, or otherwise incident to noncombat activities of that department [subject to certain conditions and] only to the extent that the law of the place where the act or omission complained of occurred would permit recovery from a private individual under like circumstances." 10 U.S.C. § 2733(a) & (b). This language is similar to the pertinent provision of the FTCA which allows for

> civil actions on claims against the United States, for money damages ... for ... personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). When an act or omission occurs in the United States, the MCA includes the same choice of law provision as the FTCA: "the law of the place

contends that the "standard of review is whether the Attorney General's refusal to certify was 'arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with the law.' Title 5, U.S.C. § 706(2)(A)." (Pet. at 3–4). Kent's reliance on the Administrative Procedures Act and the abuse of discretion standard of review is based on *Proietti v. Civiletti,* 603 F.2d 88 (9th Cir.1979), which noted that the *de novo* review was not appropriate and that the abuse of discretion stan-

dard of the Administrative Procedures Act applies to the review the Attorney General's determination that a government employee was not acting in the scope of employment. The *Proietti* decision pre-dates the Westfall Act. The Ninth Circuit decisions after the enactment of the Westfall Act apply the *de novo* standard. *See, e.g., Wilson,* 87 F.3d at 1076; *Arthur,* 45 F.3d at 295. Accordingly, the Court applies the *de novo* standard here.

where the act or omission occurred will be applied in determining liability. . . ." 32 C.F.R. § 536.28(a)(Army); *see also* 32 C.F.R. § 842.51(a)(1)(Air Force). However, unlike the FTCA, which does not include a choice of law provision for acts or omissions which occur abroad,[3] the MCA specifies the applicable law: "In claims arising in a foreign country, liability of the United States will be assessed by reference to general principles of tort law common to the majority of United States jurisdictions." 32 C.F.R. § 536.28(b); *see also* 32 C.F.R. 842.51(a)(2)("general principles of tort law common to the majority of American jurisdictions, as evidenced by Federal case law and standard legal publications").

■ The Court concludes that the MCA's focus on personal injury claims against employees of the United States acting in the scope of employment is sufficiently analogous to the FTCA for purposes of choice of law applicable to the scope of employment determination with respect to claims arising abroad. The choice of law regulations promulgated pursuant to the MCA are consistent with the FTCA and Congressional intent that the United States not be subject to foreign law. Although Kent disagrees with the Government's argument that the general principles of United States law should apply, he does not cite any binding or persuasive authority or present relevant argument precluding the use of the MCA choice of law regulations in this instance. The only legal authority he provides is the Fourth Circuit opinion in *Gutierrez de Martinez,* 111 F.3d at 1156 n. 6. In that case, the Fourth Circuit noted the difficulty of the choice of law issue; however, it did not have to address it because the parties stipulated to apply state law of Virginia to the review of Attorney General's scope of employment determination. Accordingly, *Gutierrez de Martinez* is not helpful in determining the choice of law issue.

In the absence of clear precedent regarding choice of law in FTCA cases where the act or omission occurred abroad, the Court looks to the choice of law regulations promulgated pursuant to the MCA. In that regard, the Court finds that the Restatement (Second) of Agency is a standard legal publication containing general tort principles of the United States.

### III. *Scope of Employment*

Section 228 of the Restatement (Second) of Agency provides a general definition of scope of employment. To the extent applicable to the facts of this case, section 228 provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>> (a) it is of the kind he is employed to perform;
>> (b) it occurs substantially within the authorized time and space limits;
>> (c) it is actuated, at least in part, by a purpose to serve the master . . .

According to Kent's affidavit, on the date of the accident he served as Consul General of the United States to the Republic of Russia and was fully accredited as a diplomat, which included the protection af-

---

**3.** The absence of such provision may be explained by the foreign country exception, which expressly precludes actions against the United States for "any claim arising in a foreign country." 28 U.S.C. § 2680(k); *see also Gutierrez de Martinez,* 111 F.3d at 1156 & n. 6. The known and intended consequence of the exception was that the United States could not be sued for torts committed by its representatives abroad, *Spelar,* 338 U.S. at 221, 70 S.Ct. 10, or for tortious acts or omissions which occurred in the United States and caused an injury to be suffered abroad, *Sosa,* —— U.S. at ——, 124 S.Ct. at 2754. Accordingly, the need for such provision is limited to scope of employment determinations.

forded by consular immunity. He contends that he was expected to, and did, work on behalf of the United States around the clock, seven days a week. He notes that foreign service officers working abroad are constantly aware that their behavior may impact their mission.

Kent's apartment in Russia was leased and furnished by the Department of State and provided to him without cost. He was sometimes required to attend to government business from his apartment or leave it in the middle of the night on official business. As a part of his office, Kent was provided with a driver and a car for any purpose; however, he elected to use his own car after he was advised that the overtime costs accrued to his driver had become high. At the time of the accident, Kent was driving his own car.

On the date of the accident, Kent drove directly from work to the gym and, after working out, drove to his apartment. The accident occurred on his way from the gym to his apartment. Kent notes that he is required by the Department of State to pass regular and thorough medical examinations or face revocation of his medical clearance to work overseas.

After the accident, the Department of State dispatched an officer to the scene, and commenced an investigation the following day. Kent was instructed by his superiors not to submit to a blood alcohol test on the grounds of his diplomatic status. The Department of State also retained an attorney in an attempt to resolve the matter, which apparently was unsuccessful.

With respect to the Restatement (Second) of Agency, Section 228(1)(a), Kent's affidavit shows that at the time of the accident he did not engage in any diplomatic activity and that the visit to the gym was his personal business. The Court acknowledges that Kent may have been required to work at odd hours as government business necessitated; however, he was not engaged in any such business at the time of the accident.

As to the requirement of section 228(1)(c), Kent's affidavit does not support the proposition that his drive from work to his apartment with a stop at the gym was "actuated, at least in part, by a purpose to serve" the Department of State. Kent contends that he was required by the Department of State to pass medical examinations or his medical clearance to work overseas could be revoked. However, he does not contend that he visited the gym for purposes of subjecting himself to the examination or that he was required to work out at the gym to pass the periodic medical examination to which he was subject.

With respect to the requirement of section 228(1)(b), the affidavit shows that the accident occurred after Kent had left work. He sometimes worked from home; however, he does not contend that this was the case on the day of the accident.

Kent contends that he acted in the scope of employment all the time while stationed abroad by virtue of his overseas assignment and government-provided living quarters and transportation. The Foreign Affairs Manual ("FAM") recognizes that foreign service officers and senior foreign service officers are "subject to working such additional hours over the 40 hours of the basic work week as the needs of the service require." 3 FAM § 2335.1(b). However, a 40–hour work week is generally recognized as the standard. *See id.* § 2333.1(a) & (b); 2335(a) & (b). To the extent he worked beyond regular work hours, the work had to have been based on the requirements and needs of the service. *See id.* § 2335(b). The distinction between work time and personal time is therefore recognized for purposes of compensation of foreign service officers. Kent contends,

however, that for purposes of discipline, foreign service officers serving abroad "are considered to be on duty 24 hours a day." 3 FAM § 4376. The same contention is asserted in the declaration of Sharon L. Papp, the General Counsel of the American Foreign Service Association, a professional association and exclusive bargaining representative for the members of the United States Foreign Service at the Department of State. According to the Foreign Service Manual and Ms. Papp's declaration, foreign service employees stationed abroad may be subject to discipline for their conduct outside the work place, although Ms. Papp stops well short of declaring that employees have been disciplined for the type of conduct involved in the present case. Furthermore, the conduct at issue in this case does not appear in the guidelines for disciplinary action. See 3 FAM § 4377. Accepting that Kent may have been required to work more than 40-hours per week or odd hours, the proposition that he was working around the clock seven days a week, or that the accident occurred while he was working, is not supported by his affidavit or by the Foreign Service Manual.

The issue whether a government employee is within the scope of employment around the clock often arises in FTCA cases in the context of military employees, when employees are on assignment away from home or stationed on a military base. In those cases, courts applying *respondeat superior* principles as stated in the Restatement (Second) of Agency have held that the employees do not act in the scope of employment around the clock, and specifically do not so act when commuting to or from work.

For example, in *Clamor v. United States*, 240 F.3d 1215 (9th Cir.2001), the plaintiff was in a car accident with a civilian military employee on a Navy base in Hawaii. The Attorney General certified that the civilian employee acted in the scope of employment at the time of the accident, and the plaintiff challenged that determination in her opposition to the Government's motion to dismiss. *Id.* at 1216. The appellate court reversed the district court's dismissal, which was based on the determination that the employee acted in the scope of employment. *Id.* at 1217–18. At the time of the accident, the employee was temporarily assigned to a special project in Hawaii, with the cost of his housing and transportation paid for by the Government. *Id.* at 1216. The accident occurred during employee's commute from work to his temporary home. *Id.* at 1217. Applying Hawaii law, which relies on the law of *respondeat superior* as stated in the Restatement (Second) of Agency, the Ninth Circuit noted that in circumstances of that case, scope of employment does not automatically extend to all of an employee's activities:

> We do not believe that the *respondeat superior* doctrine is so pliant that where an employee is hired in one locality and relocated to another by his employer for an indefinite period of time, any act of the employee before, during or after his working hours is one within the scope of his employment as long as he works for the employer in the latter locality.

*Id.* The Ninth Circuit held that the employee was not acting in the scope of employment. *Id.*

In *Wilson v. United States,* a serviceman who was in a car accident when driving to his duty station on a military base argued that he was in the scope of employment due to "the special employer-employee relationship in the case of a serviceman, [where] the Government exercises control over the employee at all times," and he is on call 24 hours a day. 315 F.Supp. 1197, 1198, 1199 (E.D.Pa.1970). Recognizing the special relationship and applying Restate-

ment (Second) of Agency, the court rejected the argument that it brings everything the serviceman does into the scope of employment:

> [T]o do otherwise would be tantamount to imposing liability on the Government every time a serviceman committed a negligent act which resulted in an injury. This would, of course, greatly expand the Government's liability under the Federal Tort Claims Act in spite of the long-established proposition that the Act was designed to impose liability only under circumstances where a private person would be liable.

*Id.* at 1199–1200. The court found that the serviceman did not act in the scope of employment at the time of the accident. *Id.* at 1201; *see also Perez v. United States,* 368 F.2d 320 (1st Cir.1966)(applying Restatement (Second) of Agency).[4]

On the other hand, Kent relies on *Lutz v. United States,* 685 F.2d 1178 (9th Cir. 1982). In *Lutz,* an airman who resided on the military base owned a dog which bit his neighbor's child. For the scope of employment determination, the Ninth Circuit looked to Montana law of *respondeat superior,* which in turn relies on the Restatement (Second) of Agency. *See Kornec v. Mike Horse Mining & Milling Co.,* 120 Mont. 1, 180 P.2d 252 (1947); *Keller v. Safeway Stores,* 111 Mont. 28, 108 P.2d 605 (1940), cited in *Lutz,* 685 F.2d at 1182. The court found that the airman's failure to control his dog was within the scope of employment because the base, by virtue of its regulations for pet owners, delegated to him partial responsibility for base security, which is a regular military activity. *Id.* at

1183. The court reasoned that "the employment relationship of residents of military bases continues even during the off-duty, at-home hours." *Id.* However, it also circumscribed its ruling by noting the limited scope of the FTCA sovereign immunity waiver, the same touchstone relied upon in *Wilson:*

> We do not suggest that every act of a base resident is within the scope of his employment. Such a rule would impose upon the military a liability far broader than that of a private employer, contrary to the limited waiver intended by the FTCA.

*Id.* The court in *Lutz* bolstered its ruling by relying on *Craft v. United States,* 542 F.2d 1250 (5th Cir.1976), which found that a serviceman residing on a military base acted in the scope of employment when he negligently injured a child while mowing his lawn. The court reasoned that the serviceman's choice of residing on the base resulted in the assignment to him of specific maintenance duties. *Lutz,* 685 F.2d at 1183, citing *Craft.* The basis for the respective decisions in *Lutz* and *Craft* is a finding that the injury occurred while the serviceman performed "specific duties" assigned to him by virtue of the employment relationship, *i.e.* security in *Lutz* and maintenance in *Craft.* Kent here does not contend that the accident occurred during his performance of any specific duties assigned to him by the Department of State.

 To expand *Lutz* and *Craft* beyond the cases where the employee engaged in a "specific duty" assigned to him by the Government employer would run

---

**4.** Kent suggests that the FTCA cases involving members of the military forces are inapplicable because "acting within the scope of his office or employment" in the case of a member of the military forces "means acting in line of duty." 28 U.S.C. § 2671. In *Wilson* and *Perez,* the courts acknowledged this definition, however, they nevertheless applied and based their respective rulings on the scope of employment analysis pursuant to the Restatement (Second) of Agency. *Wilson,* 315 F.Supp. at 1198, 1199; *Perez,* 368 F.2d at 321. Accordingly, the Court finds these cases instructive notwithstanding the fact that they involve members of the military forces.

afoul of the specific limitations to the sovereign immunity waiver provided in section 1346(b) and impose on the Government liability in excess of that applicable to private persons. It would also run afoul of the jurisdictional principle that "waivers of sovereign immunity are to read narrowly in favor of the sovereign." *FDIC v. Meyer*, 510 U.S. 471, 480, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). The Court finds the reasoning of *Clamor* and *Wilson* persuasive in this case, and rejects Kent's argument that, solely by virtue of his assignment abroad, he acted in the scope of his office and employment at all times, including while he was conducting his personal business.

Kent also argues in a slightly different vein that the scope of employment should be co-extensive with his diplomatic immunity from criminal prosecution. No legal authority is cited for this proposition, and the Court rejects it for the reasons stated above. The Court therefore finds that Kent did not act in the scope of his employment or office at the time of the accident.

## IV. *Request for Discovery*

■ In conjunction with his Petition, Kent requests leave to serve discovery requests on the Government.[5] He contends that this "will also be useful to adduce evidence that will identify questions of disputed fact." (Pet. at 15). Although a district court "reviewing a certification question under the Westfall Act, . . . must identify and resolve disputed issues of fact necessary for its decision," *Arthur*, 45 F.3d

at 296, Kent does not contend that there are any disputed issues of fact.

For the first time in his reply, Kent explains his request for discovery. He claims that he needs discovery because "the United States suffers from an inherent conflict of interest in determining the scope of employment issue." (Reply to Opp. to Pet. at 9). Specifically, Kent believes that the Department of State is influenced by economic issues because a certification of scope of employment for purposes of the FTCA may have an effect on its policy regarding overtime pay and disability benefits for employees injured while serving abroad. (*Id.* at 9–10). Kent also believes that the Department of State is politically motivated and "does not wish to appear to have conspired to extricate Mr. Kent from responsibility for this matter." (*Id.* at 10). The Court finds that none of these issues are relevant to the *de novo* determination of scope of employment under the applicable legal standard.[6]

Furthermore, the scope of employment determination in this case was made based on the information Kent provided. Kent requested a certification on February 13, 2004, and provided the information he wanted to be considered for that purpose. (*See* Opp. to Def's Pet., Ex. 1). On March 8, 2004, he received a letter denying his request:

This office has reviewed your request, made by a letter dated February 13, 2004, for certification pursuant to 28 U.S.C. § 2679(d) that Mr. Douglas B. Kent was acting within the scope of his

---

5. After filing his Petition, Kent served the Government with discovery requests. *See* Opp. to Def's Pet., Ex's 7–9. The Government filed a motion to stay discovery, which was granted by Magistrate Judge William McCurine, Jr. on July 28, 2004.

6. The Court notes that to some extent the Attorney General's scope of employment de-

termination is commonly made under circumstances which could be considered a conflict of interest. *See Gutierrez de Martinez*, 515 U.S. at 427, 115 S.Ct. 2227 ("In the typical case, by certifying that an employee was acting within the scope of his employment, the Attorney General enables the tort plaintiff to maintain a claim for relief under the FTCA" against the United States.).

employment with the U.S. Department of State at the time of the accident that is the subject of the above-captioned suit.

Based upon a review of the facts of the case as presented in your letter, we have concluded that Mr. Kent was not acting within the scope of his employment with the U.S. Department of State at the time of the accident in question. Accordingly, your request for certification is hereby denied.

(*Id.*, Ex. 2).[7] Accordingly, it appears that the decision was made based on the information provided by Kent. Kent filed a lengthy and detailed declaration describing the circumstances of his employment and the events surrounding the accident, which the Government does not dispute. It therefore does not appear that there are any disputed facts.

■ Requests for discovery for purposes of reviewing the Attorney General's scope of employment determinations are within the district court's discretion. *Gutierrez de Martinez*, 111 F.3d at 1155. The request should be denied "if the certification, the pleadings, the affidavits, and any supporting documentary evidence do not reveal an issue of material fact." *Id.* The Court finds that the pleadings and evidence submitted in support of and in opposition to the Petition do not reveal any disputed issues of material fact. Based on the foregoing, the Court denies the request for discovery.

**IT IS SO ORDERED.**

---

7. It is customary for the Attorney General's determination not to state the reasons for the scope of employment determination. *See Gutierrez de Martinez*, 515 U.S. at 421, 115 S.Ct. 2227.