# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2026

Lyle W. Cayce
Clerk

No. 25-50414

_____

Karen Monserrat Conchas Mesraje; Staci Sean Smith,

*Plaintiffs—Appellants*,

*versus*

United States of America,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:24-CV-183

_____

Before Stewart, Graves, and Oldham, *Circuit Judges*.

Per Curiam:*

Sergeant Avery Humberto Luengo is an active-duty, noncommissioned officer in the United States Marine Corps ("USMC"). Sgt. Luengo drove a government vehicle to San Antonio, Texas to attend recruiter training. After the first day of training, Sgt. Luengo was involved in a car accident with Karen Monserrat Conchas Mesraje and Staci Sean Smith. After suffering injuries, Plaintiffs filed a lawsuit against the United States in

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

the Western District of Texas, alleging that it is vicariously liable for Sgt. Luengo's negligence under the Federal Tort Claims Act ("FTCA"). The Government filed an opposed motion for summary judgment, arguing that Sgt. Luengo was not acting within the course and scope of his employment at the time of the accident. The district court agreed and granted the motion. Plaintiffs timely appealed. For the following reasons, we AFFIRM the district court's grant of summary judgment.

## I

Sgt. Luengo is an active-duty, noncommissioned officer in the USMC. He has been a member of the USMC since October 2016 and receives a salary. After graduating from recruiter school in 2021, Sgt. Luengo was assigned to the Recruiting Station in San Antonio where he would receive "refresher training before starting officially as a recruiter." The USMC authorized Sgt. Luengo to drive a government vehicle from McAllen, Texas, where he had set up housing, to San Antonio to attend the training. It also permitted him to drive the government vehicle to conduct official business and to get food during the training. Additionally, the USMC provided Sgt. Luengo with lodging at the Crowne Plaza Hotel and a per diem stipend for food. While Sgt. Luengo was in training, he did not have established job duties or hours as a recruiter.

On December 6, 2021, Sgt. Luengo completed his first day of training at the Recruiting Station headquarters and was dismissed for the day by his recruiting instructor. He testified that being dismissed for the day meant that he was free to go and do whatever he wanted as long as he returned for training the next morning. After being dismissed, Sgt. Luengo drove from the Recruiting Station headquarters back to the Crowne Plaza Hotel, changed into his civilian clothes, and left the hotel to pick up food from a Chinese restaurant. He did not have any work-related materials or equipment in the

government vehicle during this trip, and he was not engaged in any work-related activities. On his way to the restaurant, Sgt. Luengo disregarded a stop sign and had a car accident with Plaintiffs. Plaintiffs were severely injured.

Plaintiffs filed a lawsuit in the Western District of Texas against the Government under the FTCA. They argued that the Government is vicariously liable for Sgt. Luengo's negligence because he was the proximate cause of their injuries and was acting within the course and scope of his employment at the time of the accident. The Government filed an opposed motion for summary judgment, arguing that Sgt. Luengo was not acting in the course and scope of his employment at the time of the accident. The district court granted the motion, holding that Sgt. Luengo was not acting in the course and scope of his employment with the USMC at the time of the accident, and, in turn, that the Government is not vicariously liable for Sgt. Luengo's negligence. Thereafter, Plaintiffs timely appealed.

## II

The district court had subject matter jurisdiction under 28 U.S.C. § 1346(b)(1). This court has jurisdiction under 28 U.S.C. § 1291 because the district court entered final judgment in favor of the Government.

This court reviews a district court's ruling on a motion for summary judgment de novo. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (citing *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting citing FED. R. CIV. P. 56(a)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). "A party cannot defeat summary judgment with 'conclusory allegations,' 'unsubstantiated assertions,' or 'only a scintilla of evidence.'" *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quoting *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). This court "must view the evidence in the light most favorable to the non-moving party, drawing 'all justifiable inferences . . . in the non-movant's favor.'" *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quoting *Env't Conservation Org. v. City of Dall.*, 529 F.3d 519, 524 (5th Cir. 2008)).

## III

The FTCA allows a plaintiff to bring a civil action for money damages against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable." 28 U.S.C. § 1346(b)(1); *see also Brownback v. King*, 592 U.S. 209, 212 (2021) ("In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment." (internal quotation marks and citation omitted)). In cases involving members of the military or naval forces, "[a]cting within the scope of his office or employment" means acting in the "line of duty."[1] 28 U.S.C. § 2671. Under the FTCA, the United States is "liable to the claimant in accordance with the law of the place where

---

[1] We use the phrases "scope of employment," "course and scope of employment," and "line of duty" interchangeably.

the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006). Because Sgt. Luengo's negligent act occurred in San Antonio, this court applies Texas law.

Under Texas law, an employee's conduct falls within the scope of his employment "if his actions were '(1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed.'" *Counts v. Guevara*, 328 F.3d 212, 214 (5th Cir. 2003) (quoting *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995)); *see also Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 138–39 (Tex. 2018) ("The course-and-scope inquiry . . . involves an objective analysis, hinging on whether the employee was performing the tasks generally assigned to him in furtherance of the employer's business. That is, the employee must be acting with the employer's authority and for the employer's benefit.").

"There is a presumption that an employee involved in an accident while driving the employer's vehicle is within the scope." *Garcia v. United States*, 88 F.3d 318, 321 (5th Cir. 1996) (citing *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 636 (Tex. App.—San Antonio 1993, *reh'g denied*)). "However, this presumption is not evidence but rather a rule of procedure . . . that is overcome when positive evidence to the contrary is introduced." *EAN Holdings, LLC v. Arce*, 636 S.W.3d 290, 296 (Tex. App.—Fort Worth 2021, *pet. denied*) (citation modified). "In other words, if there is evidence that the driver was on a personal errand, or otherwise not in the furtherance of his employer's business, the presumption vanishes." *Id.* (citation modified).

Moreover, "an employee involved in an accident while going to or returning from the place of employment is generally not within the scope." *Garcia*, 88 F.3d at 321 (citing *Am. Gen. Ins. Co. v. Coleman*, 303 S.W.2d 370,

374 (Tex. 1957)); *see also Painter*, 561 S.W.3d at 139 ("We confirm that the coming-and-going rule, under which an employee is generally not acting within the scope of his employment when traveling to and from work, applies in the vicarious-liability context."). "An exception applies when the employee 'undertakes a special mission at the direction of his employer, or performs a service in furtherance of his employer's business with the express or implied approval of his employer.'" *Garcia*, 88 F.3d at 321 (quoting *Coleman*, 303 S.W.2d at 374); *see also Painter*, 561 S.W.3d at 139 ("[W]e also recognize an exception when such travel involves the performance of regular or specifically assigned duties for the benefit of the employer.").

## IV

As discussed *supra*, "[s]ummary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Sanders*, 970 F.3d at 561 (quoting FED. R. CIV. P. 56(a)).

Plaintiffs argue that there is a genuine dispute of material fact regarding whether the Government is liable for Sgt. Luengo's negligence under the FTCA because he was acting within the course and scope of his employment at the time of the accident. They assert that the "coming-and-going" rule does not apply because "Sgt. Luengo was on official business while in San Antonio in the furtherance of his employment with [the Government]." *See Lutz v. United States*, 685 F.2d 1178, 1183 (9th Cir. 1982); *Davis v. Amazon.com Servs. LLC*, No. 6:20-CV-01178, 2022 WL 18034360 (W.D. Tex. Oct. 6, 2022). They contend that even if the "coming-and-going" rule applies, the "special mission" exception to the rule applies. The Government responds that Sgt. Luengo was not acting within the course and scope of his employment when he traveled for a meal even

No. 25-50414

though the USMC authorized and sponsored his business trip to San Antonio.

The record demonstrates that Sgt. Luengo was not acting within the course and scope of his employment at the time of the accident. As discussed *supra*, an employee's conduct falls within the scope of his employment "if his actions were '(1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed.'" *Counts*, 328 F.3d at 214 (quoting *Williams*, 71 F.3d at 506).[2] While Sgt. Luengo was authorized to drive the government vehicle to attend the training in San Antonio and to get food during the training, his trip to the Chinese restaurant was not made in furtherance of the USMC's business.

The district court's conclusion that Sgt. Luengo was not acting within the course and scope of his employment is consistent with this court's precedent. In *Garcia v. United States*, the Environmental Protection Agency authorized a special agent to drive a government vehicle from Dallas to Austin to assist in a criminal investigation. 88 F.3d at 320–21. The agent was also given a gas credit and per diem stipend for food and lodging. *Id.* at 321. Around 10:00 p.m., the agent stopped at two restaurants and had drinks. *Id.*

---

[2] Plaintiffs assert that this court should consider the "special factors characteristic of military activity and discipline." *See Weaver v. U.S. Coast Guard*, 857 F. Supp. 539, 542 (S.D. Tex. 1994) (internal citations omitted). They cite four Fifth Circuit cases in which servicemembers were traveling or acting under specific orders at the time of their accidents: (1) *Hinson v. United States*, 257 F.2d 178 (5th Cir. 1958); (2) *United States v. Culp*, 346 F.2d 35 (5th Cir. 1965) (per curiam); (3) *Hallberg v. Hilburn*, 434 F.2d 90 (5th Cir. 1970); and (4) *Craft v. United States*, 542 F.2d 1250 (5th Cir. 1976). Unlike the servicemembers in *Hinson*, *Culp*, and *Hallberg*, Sgt. Luengo was neither driving under specific orders to travel to and from a particular location or to effect a permanent change of station. *See* 257 F.2d at 179–80; 346 F.2d at 36; 434 F.2d at 92. And unlike the soldier in *Craft*, Sgt. Luengo was not performing a specific duty that had been assigned to him at the time of his accident as discussed *infra*. *See* 542 F.2d at 1255. Thus, we decline to apply the "special factors."

He then drove from the second restaurant to a pharmacy and collided with the plaintiff after leaving the pharmacy. *Id.* Applying Texas law, this court held that the agent was not acting within the scope of his employment at the time of the accident. *Id.* It reasoned that "[a]ssuming *arguendo* that the agent's entire stay in Austin was a special mission, we conclude that [the "special mission" exception] would not apply at the time of the accident, because the agent was then engaged in a personal deviation." *Id.* It explained that "[h]e apparently had completed work for the day (at the very least, temporarily) and stopped for dinner; he did not eat, but instead consumed alcohol; he then drove to a pharmacy; and his destination when he drove away from the pharmacy and had the collision is unknown." *Id.*

Like the agent in *Garcia*, Sgt. Luengo had completed work for the day when the accident occurred. Sgt. Luengo drove to the Chinese restaurant from the Crowne Plaza Hotel after he had been dismissed from training for the day and changed into his civilian clothes. Neither his recruiting instructor nor his supervisor Gunnery Sgt. Daniel Garcia instructed him to drive to a particular restaurant or to purchase food after class. Moreover, Sgt. Luengo did not have any official government materials with him in the car, did not have a recruit with him, and was not recruiting during the time of the accident. Therefore, Sgt. Luengo was not acting in furtherance of the USMC's business at the time of the accident. Even if the "coming-and-going" rule does apply, and his entire trip in San Antonio was considered a "special mission," Sgt. Luengo engaged in a personal deviation by driving to the Chinese restaurant after class. Although he was driving a government vehicle, the facts show that he was ultimately not driving it in

furtherance of the USMC's business. Therefore, the "special mission" exception to the "coming-and-going" rule similarly does not apply.[3]

In *Moye v. United States*, the plaintiff sued the government under the FTCA after he and his wife were involved in a car accident with an airman who was driving his own vehicle. 218 F.2d 81, 82 (5th Cir. 1955). This court held that the airman was not acting within the course and scope of his employment during the accident because "[n]o business of the Air Force was served or furthered by [the airman's] decision" to use his automobile "for his meals or other personal purposes." *Id.* at 83. It considered several factors, including that "the car [was] the private car of the [airman]," and that "no direction" was given to the airman "in connection with his going to and from his work or to and from his meals or on other personal missions in it." *Id.* The court further explained that "[e]ven where an employee is using not his own vehicle but one furnished [to] him by his employer, it must be shown that the vehicle was furnished for use by the master *for the purpose for which it was being used*." *Id.* (emphasis added). Similarly, here, no business of the USMC was served or furthered by Sgt. Luengo's decision to drive to the Chinese restaurant after class to get food for himself. Although Sgt. Luengo drove a government vehicle instead of his personal vehicle, the USMC did not specifically furnish the government vehicle to Sgt. Luengo for him to get food from the Chinese restaurant even if he was authorized to use it to do so.

_____

[3] Plaintiffs cite the nonbinding cases *Davis v. Amazon.com Servs. LLC*, No. 20-CV-01178, 2022 WL 18034360 (W.D. Tex. Oct. 6, 2022), and *Vasquez v. United States*, No. 23-CV-727, 2024 WL 2331801 (N.D. Tex. May 22, 2024), for the proposition that the "special mission" exception applies. *Davis* is inapposite because, here, there is no fact question as to whether the "special mission" exception applies. *See* 2022 WL 18034360, at *3. And unlike the employee in *Vasquez* who was traveling to work when he was involved in a car accident, Sgt. Luengo was traveling to a Chinese restaurant after being dismissed from class for the day at the time of his accident. *See* 2024 WL 2331801, at *4.

In *Weaver v. U.S. Coast Guard*, a Coast Guardsman was driving while intoxicated during "a four-hour liberty" (an authorized absence) when he crashed his pickup truck into the victims' car in Galveston, Texas. 53 F.3d 1282, *1 (5th Cir. 1995) (per curiam). This court held that the Coast Guardsman was not acting within the course and scope of his employment when he crashed because "the deposition testimony of the crewmen and officers . . . establishe[d] that the crewmen were free to do as they pleased during the four-hour liberty." *Id.* Additionally, this court explained that "[w]hile the officer who announced the liberty might have suggested that the crewmen tend to their personal affairs, purchase supplies, or visit family members, he did not order the crewmen to do so." *Id.* Like the Coast Guardsman in *Weaver*, Sgt. Luengo was similarly free to do as he pleased after being dismissed for the day and was not ordered to drive to the Chinese restaurant.

We agree that there are no genuine disputes of material fact that preclude summary judgment. The parties do not dispute that Sgt. Luengo was in San Antonio for the training, and that he was authorized to use the government vehicle to drive to San Antonio and to get food during the training. Moreover, the fact that the USMC provided Sgt. Luengo with lodging and a per diem stipend during the training is undisputed, and any relevance it has is insufficient to create a fact question. *See Cameron Int'l Corp. v. Martinez*, 662 S.W.3d 373, 378 (Tex. 2022) (per curiam) (citing *Pilgrim v. Fortune Drilling Co.*, 653 F.2d 982, 987–88 (5th Cir. Unit A Aug. 1981)) ("[P]ayment of a travel allowance is not sufficient to create a fact question as to whether an employee was acting within the course and scope of employment at a specific point."). And the parties do not dispute that Sgt. Luengo was involved in a car accident while traveling to the Chinese restaurant after class. Under Fifth Circuit precedent and Texas state law, the undisputed facts that Sgt. Luengo was in San Antonio to attend a training and

drove a government vehicle are also insufficient to create a genuine dispute of material fact as to whether he was acting within the course and scope of his employment because he was ultimately not acting in furtherance of the USMC's business at the time of the accident. *Counts*, 328 F.3d at 214 (quoting *Williams*, 71 F.3d at 506); *Painter*, 561 S.W.3d at 138–39; *Garcia*, 88 F.3d at 320–21.

In sum, the district court did not err in granting the Government's motion for summary judgment because there are no genuine disputes of material fact. *Sanders*, 970 F.3d at 561 (quoting FED. R. CIV. P. 56(a)).

## V

For the foregoing reasons, we AFFIRM the district court's summary judgment in favor of the Government.